DA 09-0316

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 139N

MUSTANG HOLDINGS, LLC,

       Plaintiff and Appellant,

  v.

MARGE ZAVETA,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 03-629
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Darrel L. Moss, Moss & Associates, Missoula, Montana

      For Appellee:

      Philip J. O'Connell, O'Connell Law Office, Missoula, Montana

Submitted on Briefs: February 17, 2010

Decided: June 23, 2010

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Mustang Holdings, LLC (Mustang), appeals from a judgment entered in the Fourth Judicial District, Missoula County, in favor of Marge Zaveta (Zaveta). We affirm.

¶3     We review the following issues on appeal:

¶4     *Whether the Water Court's termination of Zaveta's water rights extinguished her prescriptive easement across Mustang's property?*

¶5     *Whether the District Court properly awarded damages and attorney fees and costs to Zaveta?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     Zaveta owns land along U.S. Highway 12, west of Lolo in Missoula County, Montana. Mustang purchased property adjacent to Zaveta's land in January 2003 with the intent to subdivide and develop the land. An irrigation ditch that ran across Mustang's property had provided Zaveta's sole means of transporting water from Lolo Creek to her property.

¶7     Zaveta was the successor in interest to two water rights from Lolo Creek when she purchased her property in 1986. Both of Zaveta's water rights had priority dates of April 1,

1884. The irrigation ditch by which Zaveta had moved water to her property—named the Hendrickson-Kuney Ditch—had been used by Zaveta's predecessors for almost one hundred years.

¶8     Zaveta filed statements of claim for both her water rights in 1986. The Montana Water Court recognized Zaveta's claims as valid in its 1993 Temporary Preliminary Decree for the North End Subbasin- Bitterroot River. The Water Court later notified Zaveta, once in 1995, and then again in 1996, that she was late in paying the statutorily mandated processing fees.

¶9     The Water Court scheduled a show cause hearing in October 1999 to determine whether to terminate Zaveta's claims for failing to pay the processing fee. Zaveta failed to attend the hearing and the Water Court terminated Zaveta's claims. Zaveta continued to transport water from Lolo Creek through the Hendrickson-Kuney Ditch, however, on a regular basis through December 2004.

¶10    Mustang's manager, Dennis Doran (Doran), researched Zaveta's water rights before Mustang purchased the property in 2003. Doran discovered that the Water Court had terminated Zaveta's water rights in 1999. Mustang filed a complaint seeking a declaratory judgment to extinguish Zaveta's ditch easement. Mustang argued that § 70-17-111(3), MCA, had extinguished Zaveta's easement as a matter of law when the Water Court had terminated her water rights.

¶11    Zaveta paid her late claim processing fees to the Water Court on August 26, 2003, and moved to reopen the adjudication. Zaveta did not notify Mustang of the motion to reopen

her claims. The Water Court issued an order on November 4, 2003, in which it reinstated Zaveta's claims and reopened the adjudication of those claims. The Water Court did not notify Mustang of the reinstatement of Zaveta's claims.

¶12 Mustang moved for summary judgment on its declaratory judgment claim on December 4, 2003. Zaveta opposed summary judgment on the basis that the Water Court had reinstated her water rights. The District Court determined that genuine issues of material fact existed in light of the Water Court having reinstated Zaveta's water rights. Around this time, in late November or early December of 2004, Mustang—without leave of the court—bulldozed the entire length of the Hendrickson-Kuney Ditch.

¶13 Zaveta moved the court for a preliminary injunction in which she asked that Mustang restore the ditch pursuant to § 70-17-112, MCA, which prohibits interference with a party's ditch easements. The District Court granted Zaveta's motion for a preliminary injunction and ordered Mustang to restore the Hendrickson-Kuney Ditch. This Court reversed in *Mustang Holdings, LLC v. Zaveta*, 2006 MT 234, 333 Mont. 471, 143 P.3d 456 (*Mustang Holdings I*).

¶14 This Court determined that Zaveta's circumstances were not "suitable for the issuance of a preliminary injunction" because "the entire injury [was] in the past." *Mustang Holdings I*, ¶ 16. The Court noted, however, that Zaveta would be entitled to relief if she prevailed at trial and presented evidence of damages. *Mustang Holdings I*, ¶ 17. The Court also noted that the District Court had authority to order Mustang to restore the Hendrickson-Kuney Ditch. *Mustang Holdings I*, ¶ 17.

4

¶15 The District Court held a bench trial upon remand. The District Court determined that it lacked authority to review the Water Court's decision to reinstate Zaveta's water rights. The court recognized, however, that it possessed jurisdiction over the prescriptive easement issue. The court determined that Zaveta had a valid prescriptive easement in the Hendrickson-Kuney Ditch, including the period when her water rights had been terminated. The District Court found that Mustang had "intentionally deprived" Zaveta of her water rights and her prescriptive easement. The court ordered Mustang to rebuild the ditch. The court further ordered that Mustang pay $37,500 to Zaveta in compensatory damages as well as reasonable attorney fees and costs. Mustang appeals.

## STANDARD OF REVIEW

¶16 We review the factual findings of a district court sitting without a jury to determine whether they are clearly erroneous. *Steiger v. Brown*, 2007 MT 29, ¶ 16, 336 Mont. 29, 152 P.3d 705. We review the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. We review for correctness a district court's conclusions of law. *Steiger*, ¶ 16.

¶17 We review a district court's award of damages for abuse of discretion. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 13, 339 Mont. 503, 172 P.3d 94. We also review for abuse of discretion a district court's decision to award attorney fees. *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 13, 352 Mont. 105, 214 P.3d 1260.

## DISCUSSION

5

¶18 *Whether the Water Court's termination of Zaveta's water rights extinguished her prescriptive easement across Mustang's property?*

¶19 Mustang argues that Zaveta abandoned her prescriptive easement under § 70-17-111(c), MCA, when she failed to file properly her statement of claim and the Water Court terminated her water rights to Lolo Creek in 1999. Section 70-17-111(c), MCA, provides that the performance of any act upon either tenement by the owner of the servitude or with the owner's assent that is incompatible with its nature or exercise extinguishes a servitude. Mustang argues that the Water Court's status as an administrative agency deprives it of the authority to reinstate water rights. We disagree.

¶20 The Water Court maintains the same status as any court of limited jurisdiction under the judicial branch. Section 3-7-101, MCA, *et. seq.* Jurisdiction to interpret and determine existing water rights rests *exclusively* with the Water Court. *In re Deadman's Basin Water Users Assn.*, 2002 MT 15, ¶ 15, 308 Mont. 168, 40 P.3d 387; See also Montana Water Court Rules, promulgated by this Court (Rule 1(a), W.R.Adj.R., states that the Water Court has "exclusive authority to adjudicate the claims of existing water rights").

¶21 The Water Court further possesses express statutory authority to "reopen" and reinstate a water right. Section 85-2-237, MCA, provides the Water Court with authority to reopen and review preliminary decrees. Section 85-2-237(2)(a), MCA, requires the Water Court to review "determination[s] of any claim in the decree." The authority to reinstate a party's water right must be implicit in the authority to reopen and review preliminary decrees. The Water Court's authority to reopen and review preliminary decrees would be

6

meaningless if it could not extinguish some rights, or reinstate other rights, as needed, in order to reach a final decree. Mustang fails to address this statutory provision that clearly allows the Water Court to reopen and reinstate claims.

¶22 More importantly, the validity of Zaveta's prescriptive easement—the Hendrickson-Kuney Ditch—does not rest on the validity of her water rights. This Court has held that water rights and property rights, such as ditch or easement rights for accessing water rights, are entirely bifurcated and separate from one another. *Mildenberger v. Galbraith*, 249 Mont. 161, 166, 815 P.2d 130, 134 (1991). Zaveta's prescriptive easement remains valid so long as she has met the requirements for having established a prescriptive easement.

¶23 A party seeking to establish a prescriptive easement must show open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement for the full statutory period by clear and convincing evidence. *Steiger*, ¶ 19. It appears to be undisputed in the record that Zaveta had a valid prescriptive easement. Zaveta's predecessors continuously had used the Hendrickson-Kuney Ditch for almost one hundred years before Zaveta purchased her property. It is also undisputed that Zaveta continued using the ditch between 1999 and 2004, regardless of the status of her water rights.

¶24 Mustang argues that the absence of lawful water rights automatically extinguished Zaveta's prescriptive easement. This argument would turn the law of prescriptive easements on its head. By their very nature, prescriptive easements involve at least questionable use of the property of another. *Steiger*, ¶ 21. A party may be trespassing across the property of another until the time that this trespass ripens into a prescriptive easement. Zaveta

7

possessed a valid prescriptive easement when she purchased her property and she never abandoned it. *Steiger*, ¶ 19.

¶25 Mustang argues further that it took title free and clear of all encumbrances on the land because it was a subsequent bona fide purchaser for value. Doran's check of the public records before Mustang purchased the property revealed that the Water Court had terminated Zaveta's water rights. Mustang admittedly received no notice when Zaveta moved the Water Court to reopen and reinstate her water rights. Mustang certainly had notice, however, that Zaveta had been using the Hendrickson-Kuney Ditch through her continued use of it between 1999 and the date when Mustang bulldozed the ditch in the winter of 2004.

¶26 "Actual" notice consists of express information of a fact. Section 1-1-217(1)(a), MCA. Notice is "constructive" whenever it is imputed by law. Section 1-1-217(1)(b), MCA. When a party has actual notice of circumstances sufficient to "put a prudent person upon inquiry as to a particular fact," that party has constructive notice of the fact itself. Section 1-1-217(2), MCA.

¶27 Zaveta's continued use of the Hendrickson-Kuney Ditch during the spring and summer irrigation seasons between 1999 and 2004 should have put a prudent landowner on inquiry notice. Mustang purchased the property in 2003. Mustang admitted to having undertaken a visual inspection of the land and having seen the Hendrickson-Kuney Ditch. Doran even spoke with a neighbor who told Doran that the ditch moved water to Zaveta's property. The ditch's existence and Doran's admitted awareness of the ditch and its purpose

8

were sufficient to put a prudent person on inquiry notice. Section 1-1-217(2), MCA. The District Court correctly ordered Mustang to rebuild the ditch.

¶28     *Whether the District Court properly awarded damages and attorney fees and costs to Zaveta?*

¶29     This Court will affirm an award of damages provided that sufficient evidence affords a reasonable basis for determining the specific amount awarded. *Hallenberg v. General Mills Operations, Inc.*, 2006 MT 191, ¶ 32, 333 Mont. 143, 141 P.3d 1216. Zaveta estimated that her damages for the loss of use of the ditch were "ten or twelve thousand dollars a year" for the period between 2004 and 2007 when the Hendrickson-Kuney Ditch was unusable. Zaveta testified that her inability to irrigate her property for pasture for her stock had forced her to purchase hay. Zaveta testified further that the destruction of the ditch prevented her from having adequate water to abate weeds on her property. Zaveta's testimony regarding her losses suffered provided the court with a reasonable basis for determining the damage award. *Hallenberg*, ¶ 32.

¶30     We review an award of attorney fees for an abuse of discretion. *JTL Group, Inc. v. New Outlook, LLP*, 2010 MT 1, ¶ 51, 355 Mont. 1, 223 P.3d 912. Zaveta produced substantial evidence and calculations in regard to her attorney fees and costs. Zaveta's counsel submitted an affidavit of fees and costs, as well as many supporting exhibits that outlined the details of the work performed during litigation. We cannot determine that the District Court's award of attorney fees constituted an abuse of discretion. *JTL Group*, ¶ 51.

¶31     Affirmed.

9

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT

Justice Jim Rice, concurring.

¶32 I agree with the Court's resolution of this appeal and its determination to "non-cite" the opinion. I find it troubling that the Appellee, who prevailed in the District Court, has failed to participate in the appeal by filing an answer brief. Rule 13 of the Montana Rules of Appellate Procedure provides:

> The appellant *shall* serve and file a brief within 30 days after the date on which the record is filed. The appellee *shall* serve and file an answer brief within 30 days after service of the brief of the appellant. The appellant *may* serve and file a reply brief within 14 days after service of the brief of the appellee. [Emphasis added.]

¶33 We commonly chastise litigants whose briefing fails to comply with Rules 12(1)(f), (2) of the Montana Rules of Appellate Procedure, requiring arguments supported by citations to authorities. *See e.g. State v. Dodson*, 2009 MT 419, ¶ 26, 354 Mont. 28, 221 P.3d 687; *Roe v. City of Missoula*, 2009 MT 417, ¶ 45, 354 Mont. 1, 221 P.3d 1200; *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 38, 350 Mont. 516, 212 P.3d 264; *Thornton v. Flathead Co.*, 2009 MT 367, ¶ 30, 353 Mont. 252, 220 P.3d 395. Yet, in cases such as this one, the litigant

10

has failed to submit any briefing whatsoever, and is a greater violation—an essential default before this Court.

¶34    The defaulting litigant places this Court in the difficult position of having to analyze the Appellant's arguments in a vacuum and forces the Court to rely upon independent research which may well benefit the defaulting party and prejudice the participating, appealing party. Although some litigants do not have the means to hire an attorney, compliance with the rules requires, at a minimum, that litigants provide a self-prepared statement of their position before the Court.[1]

¶35    The question then becomes what consequence should inure to the appellee who fails to file a brief. In *Alden v. Board of Zoning Commrs.*, 165 Mont. 364, 365, 528 P.2d 1320, 1320 (1974), the appellee did not file a brief or appear for argument, even though the Court had issued an order to show cause why an appearance had not been made. Thus, the Court concluded that it would "take the appellant's versions and positions as being correct if they are in fact supported by the record." *Alden*, 165 Mont. at 365, 528 P.2d at 1320.

¶36    The Court has not since applied this principle to a defaulting litigant, and it may be that the failure of the litigant to participate in *Alden* was especially egregious. However, the issue of defaulting litigants should be taken seriously and, at a minimum, the Court would be well-advised to offer little or no analysis of the issues when resolving such a case, simply affirm or reverse based upon whether the appellant has carried its burden to demonstrate reversible error, and "non-cite" the opinion. I applaud the Court for doing so here.

---

[1] The docket reflects that the Appellee here was represented by counsel.

/S/ JIM RICE

Justice James C. Nelson joins in the concurring Opinion of Justice Rice.

/S/ JAMES C. NELSON